Curran, Dennis J., J.
Yogendra Sagar has moved for class certification in behalf of all taxi drivers who serviced customers identified through the dispatch service Cambridge Radio Dispatch, Inc., and have been wrongly classified as independent contractors since October 2009 when, in fact, they were employees of Cambridge Radio Dispatch.[1] Mr. Sagar’s legal claims and the factual allegations are detailed in this Court’s Memorandum of Decision and Order on cross motions for summary judgment also issued this date [31 Mass. L. Rptr. 589). For the following reasons, the motion for class certification is allowed.
Mr. Sagar bears the burden of “providing sufficient information to enable [this Court] to form a reasonable judgment that the class meets the requirements” for class certification. Weld v. Glaxo-Wellcome, Inc., 434 Mass. 81, 87 (2001). Mr. Sagar argues, albeit in abbreviated fashion, that his motion to certify his claims under G.L.c. 149, §150 should be subject to a relaxed certification test. He correctly observes that, in parallel with Mass.R.Civ.P. 23, G.L.c. 149, §150 allows actions “for himself and for others similarly situated.” He argues that this statute creates a separate, less demanding, test for class certification.
Similar language in G.L.c. 93A, §9(2) has been construed to offer a relaxed test for class certification. Kwaakv. Pfizer, Inc., 71 Mass.App.Ct. 293, 298 (2008). Language in that statute allows a plaintiff to pursue class certification if “the use or employment of [an] unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons.” G.L.c. 93A, §9(2). This language in §9(2) “has a more mandatory tone than Rule 23.” Kwaak, 71 Mass.App.Ct. at 298. Accordingly, the test for certification under §9(2) omits “the additional predominance and superiority requirements found in Rule 23.” Id.
By analogy, similar language in G.L.c. 149, §150, allows Mr. Sagar to pursue claims “for himself and others similarly situated.” This right to pursue relief on behalf of others similarly situated resembles the more mandatory tone of G.L.c. 93A, §9(2). Accordingly, there have been some decisions that suggest, obliquely, that the language in G.L.c. 149, §150, like that of G.L.c. 93A, §9(2), omits the predominance and superiority requirements for certification under Mass.R.Civ.P. 23. See, e.g., Singer v. LEK/Alear Consulting Group, Inc., No. 08-4032 (Suffolk Super.Ct., Dec. 16, 2010) (noting similarly between G.L.c. 149, §150 and §9(2), and applying certification requirements of Rule 23(a)); Williamson v. DTMgmt., Inc., No. 02-1827, 2004 WL 1050582, *15 (Middlesex Super.Ct., Mar. 10, 2004) [17 Mass. L. Rptr. 606].
However, other decisions have not limited the applicability of Rule 23 to motions for class certification brought under G.L.c. 149, §150. See, e.g., Shea v. Weston Golf Club, No. 02-1826, 2007 WL 1537665, *2 (Middlesex Super.Ct., May 18, 2007) [12 Mass. L. Rptr. 437] (“even where there is a separate statutory provision for bringing an action on behalf of others similarly situated, the proprieiy of a class action is subject to Mass.R.Civ.P. 23”); Michalak v. Boston Palm Corp., No. 03-1334, 2004 WL 2915452 *4 (Suffolk Super.Ct., Sept. 17, 2004) [18 Mass. L. Rptr. 460]. In the absence of appellate authority explicitly stating that the predominance and superiority requirements do not apply to motions for class certification regarding claims brought under G.L.c. 149, §150, this Court will apply Mass.R.Civ.P. 23 to such claims in full.
There is no dispute that the putative class, which includes “hundreds” of members, satisfies the numerosity requirement for class certification.
There is, however, an argument that the putative class does not satisfy the “commonality” requirement for class certification. To demonstrate commonalify, Mr. Sagar must show that the putative class’s claims arise from “a common relationship to a definite wrong.” Spear v. H.V. Greene Co., 246 Mass. 259, 266 (1923); Holzmanv. Gen. Motors Co., No. 02-1368, 2007 WL 4098913, *9 (Middlesex Super.Ct., Nov. 6, 2007) (class members must have “a common interest in the subject matter of the suit and a right and interest to ask for the same relief’). Mr. Sagar suggests that the members of the putative class—taxi drivers who operated taxi cabs using Ambassador’s dispatch service— share an interest in pursuing relief for being wrongly classified as independent contractors.
*588 The defendants respond that any misclassification claim would entail individualized inquiries to determine each class member’s schedule, hours worked, income, and expenses, to determine the extent of any damages to which they may be entitled. This argument is off the mark. “[I]ndividual questions regarding the amount of damages will not preclude class certification. A class action remains an appropriate vehicle for relief even when individual questions of the amount of damages exist for each potential class member.” Waters v. Earthlink, Inc., No. 01-0628, 2006 WL 1549685, at *6 (Barnstable Super.Ct., May 10, 2006), citing Weld, 434 Mass, at 92.
This is not a case in which the putative class’s right to relief would “hinge on facts that defy broad-brush class wide treatment.” Holzman, 2007 WL 4098913, at *10. Quite the opposite. Mr. Sagar has alleged that Ambassador treated all drivers operating taxis using its service as independent contractors. He further alleged that Ambassador failed to pay overtime rates, failed to consistently pay an hourly rate complying with the state minimum wage, and indeed, retained 10% of all credit card receipts, coupons, and corporate vouchers—including tips—used to pay drivers. These are precisely the sort of allegations lending themselves to class-wide resolution, at least as to whether or not a right to relief exists, as distinct from the damages suffered by individual class members. See Waters, 2006 WL 1549685, at *6.
Similarly, there is a dispute as to whether or not the putative class satisfies the “typicality” requirement for class certification. Typicality requires “a sufficient relationship . . . between the injury to the named plaintiff and the conduct affecting the class.” Weld, 434 Mass, at 87. “A plaintiff representative normally satisfies the typicality requirement with an allegation that the defendant acted consistently toward [the representative] and the members of a putative class.” Id. Here too, the gravamen of Mr. Sagar’s claim is that he was wrongly classified as an independent contractor according to a uniform policy, consistently applied to all members of the putative class.
The defendants argue that the varying statuses of the drivers operating taxis using Ambassador’s dispatch service render it impossible for Mr. Sagar’s claim to be typical of the putative class. They explain that drivers may be primary leaseholders of medallions, sub-lessees driving under a medallion for a specific length of time, or “shift drivers” substituting temporarily for a sub-lessee or a leaseholder on a shorter-term basis, as Mr. Sagar did between 2011 and 2013. However, this is a distinction without a difference. The type of relationship between a given driver and the medallion under which they operated is irrelevant to the question as to whether or not they were misclassified as independent contractors.[2]
As explained in this Court’s Memorandum of Decision and Order on the cross motions for summary judgment, there is evidence that Ambassador relied on the putative class to provide services to its corporate customers. There is no suggestion that Ambassador relied only on medallion leaseholders, or only on sub-lessees, or only on shift drivers, to the exclusion of the other categories, in calling upon them to provide services to its corporate customers. For this reason, that reliance on leaseholders, sub-lessees, and shift drivers alike may violate prong two of G.L.c. 149, §148B, if Ambassador’s usual course of business involves providing taxi services to its corporate customers.
The evidence currently before the Court allows the reasonable judgment that Mr. Sagar, like the rest of the putative class, provided taxi services to Ambassador’s corporate customers, implicating prong two of §148B. That is sufficient to show typicality.[3]
The defendants’ remaining arguments on the adequacy of Mr. Sagar’s representation require little discussion. The defendants suggest Mr. Sagar is not a credible witness; but class certification would be difficult indeed if a defendant’s suggestion that the plaintiff is not credible was sufficient to deny certification. The defendants also emphasize potential conflicts between the interests of Mr. Sagar, a shift driver, and other members of the putative class, who may have been sub-lessees or primary leaseholders of taxi cab medallions. As explained above, those differences are not relevant to the issues raised by Mr. Sagar’s claims.
The defendants’ arguments on the predominance and superiority issues repeat their arguments regarding commonality and typicality. They argue that the variation in an individual driver’s damages, and the differences between medallion leaseholders, sub-lessees, and shift drivers, mean individual issues predominate over class issues in this litigation. For the reasons given above, this Court disagrees. Finally, while the possibility of treble damages might provide an incentive for class members to pursue relief on an individual basis that falls far short of showing that class-wide adjudication is not the most expeditious method of resolving Mr. Sagar’s claims.
ORDER
For these reasons, Mr. Sagar’s motion for class certification is ALLOWED.

Cambridge Radio Dispatch, Inc., doing business as Ambassador Brattle Cab, will be referred to as “Ambassador.”

This Court concluded in its Memorandum of Decision and Order on the cross motions for summary judgment that the “shift fees” and lease payments associated with use of a taxi cab medallion in Cambridge generally did not go to dispatch companies like Ambassador, and in any event, that Mr. Sagar paid his shift fees to entities other than Ambassador [31 Mass. L. Rptr. 589].

However, if later evidence shows that Mr. Sagar did not provide taxi services to Ambassador’s corporate customers in a manner typical of the putative class, this Court may entertain a motion to decertify the class.
There is a further dispute about whether Mr. Sagar can provide adequate representation for the putative class. The defendants argue that Mr. Sagar destroyed evidence material *589 to the issues raised in this litigation, and has not lent his full cooperation to the discovery process in this case. Without commenting on the underlying merits of those allegations, this Court concludes that, at this juncture, the defendants do not show that Mr. Sagar is unable to provide adequate representation for the putative class.
A review of the docket shows that the defendants have filed no motions alleging either spoliation of evidence or discovery rule violations. It would be incongruous to conclude that Mr. Sagar is an unsuitable representative for the putative class without giving him a full and fair opportunity to be heard on the underlying alleged spoliation and discovery disputes.